UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| DANIEL HAMELBERG, ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> BOUNDARY WATERS BANK, an ) <br> FDIC-regulated commercial bank, ) <br> ) <br> Defendant. ) | Case No. 12-CV-2049 |

## OPINION

This case is before the court for ruling on the Motion to Dismiss Complaint (#8) filed by Defendant, Boundary Waters Bank. This court has carefully considered the arguments of the parties and the documents provided by the parties. Following this careful and thorough review, Defendant's Motion to Dismiss Complaint (#8) is GRANTED.

## FACTS[1]

Plaintiff, Daniel Hamelberg, is a member and manager of Liberty on the Lake, LLC, (LOTL), an Illinois limited liability company which is involved in developing real estate in Champaign County, Illinois. Defendant is an out-of-state FDIC-regulated commercial bank and lending institution registered in the state of Minnesota. On July 2, 2007, Defendant and LOTL entered into a loan agreement where Defendant made financing available to LOTL for construction purposes. The Loan and Security Agreement entered on July 2, 2007, stated

---

[1] The facts are taken from Plaintiff's Verified Complaint and the documents referred to in the Complaint. This court notes that the parties, including Plaintiff, have relied on these documents in making their arguments. This court further notes that it may consider documents, such as contracts, that the Complaint refers to or that are central to the Complaint in ruling on a Motion to Dismiss. See Fed. R. Civ. P. 10(c); Tierney v. Vahle, 304 F.3d 734, 738 (7th Cir. 2002); Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431-32 (7th Cir. 1993).

that LOTL consented to an exclusive jurisdiction clause which provided that all disputes related to the loan agreement must be adjudicated in Minnesota.

As additional security for the LOTL loan, Plaintiff provided Defendant with an "Irrevocable Standby Letter of Credit," No. 08-40, in the amount of $1.6 million. This letter of credit was dated December 27, 2008 and stated that Defendant was the Beneficiary, Plaintiff was the Applicant and First Mid-Illinois Bank & Trust, NA was the Issuer. The letter of credit stated that the Issuer established the irrevocable standby letter of credit in favor of Defendant, as Beneficiary, and that it set forth "in full the terms of Issuer's obligation to Beneficiary." The letter of credit stated that the Issuer's "obligation cannot be modified by any reference in this Letter of Credit, or any document to which this Letter of Credit may be related." The letter of credit provided that the Issuer would pay the Beneficiary upon the receipt of: (1) the original letter of credit, together with any amendments; (2) a sight draft drawn by Beneficiary on Issuer; and (3) a signed statement by Beneficiary including the following statement, "Beneficiary hereby certifies that Liberty on the Lake, LLC is in default under a certain promissory note payable to Boundary Waters Bank dated 07/02/07 in the amount of $12,700,000.00 & all renewals, extensions, modifications & substitutions." The letter of credit also provided that it would be governed by the laws of Illinois.

The letter of credit was renewed in 2009 and 2010. The letter of credit was again amended in 2011. The written "Amendment to Letter of Credit," dated August 31, 2011, stated that the Applicant was amended to "DHH, LLC" and the maturity date was amended

to August 31, 2012. The Amendment stated that "All other terms and conditions of the credit remain unchanged."

PROCEDURAL HISTORY

On January 31, 2012, Plaintiff filed a Verified Complaint in the circuit court of Champaign County. Plaintiff alleged that, since July 2, 2007, the LOTL loan agreement with Defendant, and related documents, had been amended from time to time. Plaintiff alleged that the loan documents remained in full force and effect at this time, as amended. Plaintiff alleged that, in 2011, the parties were engaged in discussions about restructuring the loan in light of the recent economic downturn. Plaintiff alleged that these discussions continued into August 2011. Plaintiff alleged that, on or about August 15, 2011, Defendant promised Plaintiff that it would enter into good faith negotiations for a settlement of the LOTL loan if Plaintiff would renew the letter of credit. Plaintiff alleged that he agreed and renewed the letter of credit prior to its expiration on August 31, 2011.

Plaintiff alleged that, in renewing the letter of credit, he relied on Defendant's promise to negotiate the settlement of the LOTL loan in good faith. Plaintiff also alleged that his reliance on Defendant's promise to negotiate in good faith was reasonable and justified. Plaintiff further alleged that his reliance on this promise was foreseeable by Defendant in light of its unambiguous promise to negotiate settlement of the LOTL loan in good faith. Plaintiff alleged that Defendant had not taken certain steps it had agreed to take in order to negotiate a settlement of the LOTL loan and that "[n]otwithstanding Defendant's promise and Plaintiff's renewal of the [letter of credit], Defendant has failed to enter into good faith

negotiations to settle the LOTL loan."

Plaintiff alleged that LOTL had failed to meet its latest payment obligation under the terms of the loan agreement, thereby exposing Plaintiff's personal funds under the letter of credit to possible call and draw by Defendant. Plaintiff alleged that Defendant's attorney had recently advised Plaintiff's attorney that Defendant was considering drawing on the letter of credit. Plaintiff argued that Defendant was and should be estopped from drawing on the letter of credit. Plaintiff asked that Defendant be restrained and enjoined from drawing on the letter of credit and that the court declare the letter of credit "null, void and without legal effect."

On February 1, 2012, a Temporary Restraining Order (TRO) was entered in the circuit court of Champaign County. The court found that Plaintiff had shown that he had a clearly ascertainable right in need of protection and that there was a fair question that Plaintiff would succeed on the merits of his promissory estoppel claim. The court further found that Plaintiff had shown that he would "suffer irreparable harm if an injunction does not issue, namely, his credit rating, investment, and ability to sell lots on behalf of [LOTL], and his ability to recover those funds from Defendant in the event that he prevails on the merits at trial." The court therefore ordered that Defendant was temporarily restrained from drawing on the letter of credit. According to Plaintiff, the parties then stipulated that the TRO would remain in effect until a hearing on Plaintiff's request for preliminary injunction.

On February 20, 2012, Defendant filed a Notice of Removal (#1) and removed the case to this court based upon diversity jurisdiction. On March 9, 2012, Defendant filed its

4

Motion to Dismiss (#8) and Memorandum in Support (#9), with attached exhibits. On March 26, 2012, Plaintiff filed his Response to Motion to Dismiss (#10), with attached exhibits.

ANALYSIS

I.  STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure challenges the sufficiency of the complaint to state a claim upon which relief may be granted. See Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2007), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949, citing Twombly, 550 U.S. at 556.  Secondly, the court must determine whether the complaint states a plausible claim for relief.  See Iqbal, 129 S. Ct. at 1950.  Therefore, if there are well-pleaded factual allegations, the court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 129 S. Ct. at 1950.

II.  DEFENDANT'S MOTION TO DISMISS

In its Motion to Dismiss (#8), Defendant argued that there is no law that allows a party to nullify an Irrevocable Standby Letter of Credit (whose only condition prior to presentment is the default of the borrower, which Plaintiff admits has occurred) on the grounds that Defendant was legally compelled to renegotiate the underlying loan with a third party.  This

5

court agrees.

This court initially notes that it agrees with Plaintiff that Illinois law, rather than Minnesota law, applies to this case because it is the letter of credit which is at issue, and the letter of credit states that it shall be governed by Illinois law. This court also notes that Defendant has argued that Plaintiff does not have standing to challenge the letter of credit because it is DHH, LLC which is the Applicant on the Amended letter of credit rather than Plaintiff. Plaintiff, however, has attached an Affidavit of Ratification to his Response to the Motion to Dismiss (#10) and has stated that "[a]s the sole member of DHH, and on behalf of DHH, pursuant to Federal Rule of Civil Procedure Rule 17(a), I hereby ratify this action brought by and in the name of Daniel Hamelberg. DHH agrees to be bound by the results of this action, and waives any right to pursue any claims on the letter of credit outside of this proceeding." This court therefore concludes that the fact that this suit was brought by Plaintiff rather than the real party in interest to the letter of credit at issue, DHH, has been cured by ratification. See Rawoof v. Texor Petroleum Co, Inc., 521 F.3d 750, 760 (7th Cir. 2008) (recognizing that "ratification is a legitimate way to cure an initial failure to prosecute an action in the name of the real party in interest" under Rule 17(a) of the Federal Rules of Civil Procedure).

This court further agrees with Plaintiff that Illinois recognizes a cause of action for promissory estoppel. See Newton Tractor Sales, Inc. v. Kubota Tractor Corp., 906 N.E.2d 520, 525 (Ill. 2009). The elements of a claim of promissory estoppel are: "(1) defendant made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's

6

reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." Wigod v. Wells Fargo Bank, N.A., ___ F.3d ___, 2012 WL 727646, at *10 (7th Cir. 2012), quoting Newton Tractor Sales, Inc., 906 N.E.2d at 523-24.

The question then becomes whether the allegations of Plaintiff's Verified Complaint "plausibly give rise to an entitlement to relief." This court agrees with Defendant that the law on letters of credit bars Plaintiff's claim of promissory estoppel.

"A letter of credit is a contract which obligates the issuer to pay in the event of a default by the customer, who procured the letter's issuance." Molter Corp. v. Amwest Sur. Ins. Co., 642 N.E.2d 919, 922 (Ill. App. Ct. 1994), citing Pastor v. Nat'l Republic Bank, 390 N.E.2d 894, 897 (Ill. 1979). In construing the nature and terms of a letter of credit, the same general principles apply which govern other written contracts. Molter Corp., 642 N.E.2d at 922. "Where the terms of a contract are clear and unambiguous, the terms alone will determine the duties of the parties." Molter Corp., 642 N.E.2d at 922.

A letter of credit is issued by a bank at the request of a customer and provides that the bank will honor a draft that complies with the conditions specified in the letter of credit. The Bazaar, Inc. v. Exchange Nat'l Bank of Chicago, 523 N.E.2d 57, 58 (Ill. App. Ct. 1988). The letter of credit in this case is categorized as a "standby" letter of credit because it obligates the issuer to pay the beneficiary in the event of a default by the one who procured the letter's issuance. Pastor, 390 N.E.2d at 897; Stringer Constr. Co. v. Am. Ins. Co., 430 N.E.2d 1, 4 (Ill. App. Ct. 1981). The "letter of credit has been recognized as a commercially useful credit device that substitutes the financial responsibility of a bank for the less desirable financial

responsibility of a party to the commercial transaction." Stringer Constr. Co., 430 N.E.2d at 4.

Illinois has adopted the Uniform Commercial Code on letters of credit. The Uniform Commercial Code does not distinguish between traditional letters of credit (typically used for sales transactions) and standby letters of credit. Pastor, 390 N.E.2d at 897; see also Reid v. Plantation Sea Farms, 1986 WL 11001, at *2 (N.D. Ill. 1986); First Arlington Nat'l Bank v. Stathis, 413 N.E.2d 1288, 1293 (Ill. App. Ct. 1981). Illinois law provides:

> Rights and obligations of an issuer to a beneficiary or a nominated person under a letter of credit are independent of the existence, performance, or nonperformance of a contract or arrangement out of which the letter of credit arises or which underlies it, including contracts or arrangements between the issuer and the applicant and between the applicant and the beneficiary.

801 Ill. Comp. Stat. 5/5-103(d) (West 2010). Illinois law also provides that "[c]onsideration is not required to issue, amend, transfer, or cancel a letter of credit." 810 Ill. Comp. Stat. 5/5-105 (West 2010).

The law is therefore clear that a letter of credit is independent of the underlying agreement between the customer and the beneficiary. The Bazaar, Inc., 523 N.E.2d at 58; Stringer Constr. Co., 430 N.E.2d at 4. "The obligation of the credit is without reference to the compliance of the [customer] or the [beneficiary] with the underlying contract." See

Pastor, 390 N.E.2d at 897. "The independence principle seeks to preserve the 'commercial usefulness of the letter of credit as a vehicle of rapid and guaranteed payment in commercial transactions.'" Lincoln Nat'l Life Ins. Co. v. TCF Nat'l Bank, 2011 WL 824618, at *4 (N.D. Ill. 2011), quoting Vill. of Long Grove v. Austin Bank of Chicago, 644 N.E.2d 456, 459 (Ill. App. Ct. 1995). Accordingly, the independence principle "posits that if the documents presented by [the Beneficiary] conform to the requirements stated in the letter of credit, the [Issuer] may not look to the underlying contract between the [Applicant] and the [Beneficiary] in determining whether to honor the demand." See Lincoln Nat'l Life Ins. Co., 2011 WL 824618, at *4, quoting Vill. of Long Grove, 644 N.E.2d at 458. Illinois courts have recognized that a letter of credit is not a guaranty or surety arrangement because "the issuer is bound to pay the beneficiary and because this obligation is not subject to the various defenses available to a guaranty or surety undertaking." Stringer Constr. Co., 430 N.E.2d at 4, citing Pastor, 390 N.E.2d at 897. The court in Stringer Constr. Co. stated:

> Generally, if the documents presented conform to the letter of credit requirements, the issuer is not required or permitted to go behind the documents, and payment is required without reference to the rights and obligations of the parties to the underlying contract [citations omitted] unless the letter of credit provides to the contrary. (*Pastor v. National Republic Bank.*) If this were otherwise, the unique commercial usefulness of the letter of credit as a vehicle of rapid and guaranteed payment in

9

commercial transactions would be destroyed.

Stringer Constr. Co., 430 N.E.2d at 4.

In other words, the Issuer bank cannot refuse to honor the letter of credit by asserting that there is a breach of the underlying contract. Lincoln Nat'l Life Ins. Co., 2011 WL 824618, at *4; Pastor, 390 N.E.2d at 897; Jupiter Orrington Corp. v. Zweifel, 469 N.E.2d 590, 592-93 (Ill. App. Ct. 1984). Thus, the Seventh Circuit has recognized that letters of credit "are promises to pay that are <u>absolute</u> and thus independent of the underlying contract and so protect commercial transactions from both buyers' trickery and judges' and jurors' foibles." Phelps Dodge Corp. v. Schumacher Elec. Corp., 415 F.3d 665, 670 (7th Cir. 2005) (emphasis added).

In this case, the letter of credit provided that the Issuer would pay the Beneficiary upon the receipt of: (1) the original letter of credit, together with any amendments; (2) a sight draft drawn by Beneficiary on Issuer; and (3) a signed statement by Beneficiary including the following statement "Beneficiary hereby certifies that Liberty on the Lake, LLC is in default under a certain promissory note payable to Boundary Waters Bank dated 07/02/07 in the amount of $12,700,000.00 & all renewals, extensions, modifications & substitutions." There is no dispute that LOTL has defaulted on the loan agreement and Defendant, as Beneficiary, could demand payment of the letter of credit. When the term of the letter of credit was extended to August 31, 2012, the written "Amendment to Letter of Credit" specifically provided that "All other terms and conditions of the credit remain unchanged."

In his response to Defendant's argument regarding the law on letters of credit,

Plaintiff argued that he "is not disputing the transaction that underlies the [letter of credit] but rather "seeks to protect his letter of credit in light of the inequitable conduct by Defendant in promising to negotiate in return for [Plaintiff's] keeping the letter of credit alive and exposed." Plaintiff has argued that his claim based on a promise to negotiate is not too vague and subjective, relying on Aceves v. U.S. Bank Nat'l Assoc., 120 Cal. Rptr. 3d 507 (Cal. Ct. App. 2011), and Dixon v. Wells Fargo Bank, 798 F. Supp. 2d 336 (D. Mass. 2011). In Aceves, the court concluded that the plaintiff had stated a cause of action for promissory estoppel where the bank holding the plaintiff homeowner's mortgage agreed to work with the plaintiff on a mortgage reinstatement and loan modification if she no longer pursued relief in bankruptcy court. Aceves, 120 Cal. Rptr. 3d at 514-18. In Dixon, the district court entered a lengthy and scholarly Opinion which concluded that the plaintiff homeowners could maintain a cause of action for promissory estoppel where the gravamen of their complaint was that the bank holding their mortgage "promised to engage in negotiations to modify their loan, provided that they took certain 'steps necessary to enter into a mortgage modification.'" Dixon, 798 F. Supp. 2d at 340. The plaintiffs thus "stopped making payments on their loan and submitted the requested financial information–only to learn subsequently that the bank had initiated foreclosure proceedings against them." Dixon, 798 F. Supp. 2d at 340. The court in Dixon recognized, however, that it was stretching the law of promissory estoppel to cover "an agreement to negotiate" but concluded that it was warranted in that case because the bank "made a specific promise to consider the Dixons' eligibility for a loan modification if they defaulted on their payments and submitted certain

11

financial information." Dixon, 798 F. Supp. 2d at 342-43. The court nevertheless recognized that its decision could be considered an "anomaly" with little support in the law. Dixon, 798 F. Supp. 2d at 349-52. This court therefore concludes that the Dixon decision cannot be stretched even further to provide support for Plaintiff's cause of action. Most significantly, both Aceves and Dixon involved homeowners trying to save their homes from foreclosure, a factual situation not even remotely similar to this case, and neither case involved a letter of credit. This court therefore concludes that neither Aceves nor Dixon can have any application to the circumstances alleged here.

The fact is that Plaintiff has cited no case law which has recognized a cause of action for promissory estoppel seeking to prevent enforcement of an "Irrevocable Standby Letter of Credit." This court concludes that, based upon Illinois law, the Issuer must comply with the clear terms of the letter of credit and the letter of credit cannot be challenged based upon allegations of a promise to negotiate a settlement of the underlying loan agreement. This court concludes that to allow such a broad interpretation of promissory estoppel would be contrary to Illinois law which provides that the "[r]ights and obligations of an issuer to a beneficiary" of a letter of credit are independent of "contracts or arrangements" between "the applicant and the beneficiary." 810 Ill. Comp. Stat. 5/5-103(d) (West 2010). Moreover, such a broad interpretation would "jeopardize the utility of the letters of credit which flows from the independence of the issuer's engagement from the underlying contract." See Reid, 1986 WL 11001, at *4.

This court therefore concludes that this case must be dismissed for failure to state a

12

claim upon which relief can be granted. This court also concludes that there was no basis for granting the Temporary Restraining Order requested by Plaintiff. As the Illinois Appellate Court has recognized, "to permit an injunction to issue against presentment of a letter of credit when such an injunction would not be proper against its payment by the issuer . . . would be tantamount to allowing a party to accomplish indirectly that which he is forbidden to do directly." Jupiter Orrington Corp, 469 N.E.2d at 593.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion to Dismiss Complaint (#8) is GRANTED. Plaintiff's Verified Complaint is dismissed.

(2) This case is terminated.

ENTERED this 10th day of April, 2012

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE